UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| NOMIKI N. VORGIAS, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MEMORIAL HEALTH SYSTEM, INC. )<br>d/b/a MEDPOINT EXPRESS CLINICS )<br>and CHRIS ENDRES, )<br>    Defendants. ) | CAUSE NO.: 2:12-CV-218-RLM-PRC |

## OPINION AND ORDER

This matter is before the Court on a Motion for Leave of Court to File Amended Complaint [DE 12], filed by Plaintiff Nomiki N. Vorgias on August 15, 2012.

## PROCEDURAL BACKGROUND

In the original six-count Complaint, filed May 30, 2012, and brought against Memorial Health System, Inc. d/b/a Medpoint Express Clinics ("Memorial") and Chris Endres, Plaintiff alleges three claims under the Family and Medical Leave Act ("FMLA") (Counts I-III) as well as claims under Indiana common law for tortious wrongful discharge, tortious interference with an employment contract, and promissory estoppel (Counts IV-VI).

On July 16, 2012, Defendants filed a Motion to Dismiss Plaintiff's Complaint in its entirety for a failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The deadline for Plaintiff to file a response to that motion was August 2, 2012, and Plaintiff never filed a response.

However, on August 15, 2012, Plaintiff filed the instant Motion for Leave of Court to File Amended Complaint. Defendants filed a response on August 24, 2012. On September 7, 2012,

Plaintiff filed a reply brief, and on October 3, 2012, Defendants filed a sur-reply, with leave of Court.

**ANALYSIS**

In the instant motion, Plaintiff seeks leave of Court to amend her Complaint to supplant her claims initially under the FMLA with claims brought instead under the Americans With Disabilities Act ("ADA"). The proposed Amended Complaint attached to the motion does not include the FMLA claims originally pled in Counts I-III of the Complaint but instead brings new Counts I and II under the ADA. Plaintiff also restates the Indiana common law claims pled in the original Complaint as Counts IV-VI as Counts III-V in the Amended Complaint.

As an initial matter, Defendants are correct that Plaintiff's reply brief is untimely. Defendants' response was filed on August 24, 2012. Under Northern District of Indiana Local Rule 7-1, Plaintiff had seven days to file a reply. That seven days in addition to the extra three days granted under Federal Rule of Civil Procedure 6(d) and the fact that the third day, September 3, 2012, was a federal holiday, made Plaintiff's reply due on September 4, 2012. Plaintiff did not file a reply under September 7, 2012. However, in this instance in the interests of justice, the Court declines to strike the reply brief as requested by Defendants.

Federal Rule of Civil Procedure 15 governs amendments to pleadings and provides, in part:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
> 　　(A) 21 days after serving it, or
> 　　(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). Here, because the time for Plaintiff to amend her pleading as a matter of course has expired, Plaintiff seeks leave of Court to file the amendment. The United States Supreme Court explained the term "freely give" as follows:

> In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.-the leave sought should, as the rules require be freely given.

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). The standard for futility is the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). *See Townsel v. DISH Network LLC*, 668 F.3d 967, 969 (7th Cir. 2012); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). The decision whether to grant or deny a motion to amend lies within the sound discretion of the district court. *See Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990). The Court considers each prosed amended count in turn.

### A. Counts I and II – ADA Claims

Acknowledging that she has failed to state a claim for which relief can be granted in Counts I-III of the original Complaint brought under the FMLA, Plaintiff's proposed Amended Complaint seeks to replace those original counts with amended Counts I and II brought instead under the ADA. In response, Defendants argue that the ADA claims in proposed amended Counts I and II are time barred because the ADA claims were not alleged until more than 90 days after Plaintiff received her right to sue letter. Plaintiff replies that the ADA claims relate back under Federal Rule of Civil Procedure 15(c). In the sur-response, Defendants argue that the ADA claims do not relate back to the FMLA claims in the original Complaint.

Federal Rule of Civil Procedure 15(c) provides that an "[a]mendment to a pleading relates back to the date of the original pleading when[] (A) the law that provides the applicable statute of limitations allows relation back [or] (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading . . . ." Fed. R. Civ. P. 15(c)(A)-(B). Generally, "relation back is permitted . . . where an amended complaint asserts a new claim on the basis of the same core of facts, but involving a different substantive legal theory than that advanced in the original pleading." *Bularz v. Prudential Ins. Co. of Am.*, 93 F.3d 372, 379 (7th Cir. 1996). As a result, the "new substantive claim . . . relates back to the date of the original pleading, provided the new claim stems from the same 'conduct, transaction, or occurrence' as was alleged in the original complaint . . . [;] there is no additional requirement that the claim be based on an identical theory of recovery." *Id*.

Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 12, 2011. The EEOC dismissed Plaintiff's Charge and issued her a right-to-sue letter on March 7, 2012. Under the ADA, a plaintiff must file suit within 90 days of receiving the right-to-sue letter. *Houston v. Sidley & Austin*, 185 F.3d 837, 838-39 (7th Cir. 1999) (citing 42 U.S.C. § 2000e-5(f)(1)). Plaintiff filed her original Complaint on May 30, 2012, which was within the 90-day filing period. However, the original Complaint alleged federal claims under the FMLA but not the ADA. Defendants argue that, because Plaintiff's motion to amend the complaint to add ADA claims was not filed until August 15, 2012, which is more than 150 days after the EEOC sent Plaintiff the right-to-sue letter, Plaintiff's ADA claims are time-barred, and, thus, the amended complaint would be futile.

In her reply brief, Plaintiff argues that her ADA claims relate back to the filing of the original Complaint, which was within the 90-day filing period, because her proposed ADA claim, which would otherwise be time barred, stems from the same "conduct, transaction, or occurrence" alleged in support of the FMLA claims in the original Complaint. Plaintiff states generally that she "asserts no new facts or attempts to alter the nature of the suit against the Defendants." Pl. Reply, p. 8. In their sur-reply, Defendants disagree, arguing that the facts alleged in support of the FMLA claim in the original Complaint are not the same facts alleged in support of the ADA claim in the proposed Amended Complaint.

A comparison of the original Complaint and the proposed Amended Complaint show that the paragraphs under the heading "Facts" are essentially identical. This includes the following allegations.

Prior to accepting the employment offer from Memorial, Plaintiff had "taken some time off due to treatment of an aggressive cancer," Compl. ¶ 13; Am. Compl. ¶ 12. At the time of her hire, the cancer was in remission but she was "taking prescription narcotic pain medication to treat her persisting pain symptoms." Compl. ¶ 14; Am. Compl. ¶ 13. Plaintiff's health condition and medications were openly discussed during her interview and the hiring process with Human Resources, Occupational Health, and her Nurse Manager, Laura. Compl. ¶ 15; Am. Compl. ¶ 14. Plaintiff indicated on her application paperwork that she was taking prescription pain medication. Compl. ¶ 16; Am. Compl. ¶ 15. Chris Endres, the Director of MedPoint Express Clinics for Memorial, "assured [Plaintiff], that so long as she was capable of performing her job functions, her medication and ongoing treatment will not be an issue." Compl. ¶ 17; Am. Compl. ¶ 16. Plaintiff

5

performed her employment to her employer's satisfaction. Plaintiff informed Tammy Erdlec,[1] who started as the new Nurse Manager after Plaintiff's hire, of the Plaintiff's pain medications and, on several occasions, requested time off due to nausea stemming from the medications. Compl. ¶ 19; Am. Compl. ¶ 18.

On or about May 26, 2011, approximately a year after Plaintiff's hire date, "Mr. Endres approached [Plaintiff] at the Valparaiso MedPoint clinic and gave her a packet to fill out," Compl. ¶ 20; Am. Compl. ¶ 19, which Mr. Endres explained were "fit for duty" papers, Compl. ¶ 21; Am. Compl. ¶ 20. No one else at Memorial was requested to fill out "fit for duty" or similar paperwork to re-certify their eligibility for employment after a year. Compl. ¶ 22; Am. Compl. ¶ 21. Plaintiff noted that the paperwork was actually FMLA leave certification. Compl. ¶ 23; Am. Compl. ¶ 22. On May 27, 2011, Plaintiff visited her oncologist at Northwestern University Hospital in Chicago, Illinois, and asked him to review and fill out the Medical Certification portion of the paperwork she had received from Mr. Endres. Compl. ¶ 24; Am. Compl. ¶ 23. Her doctor "assured her that based on her remission and health status, she does not need to be on FMLA leave and did not fill out the paperwork." Compl. ¶ 25; Am. Compl. ¶ 24.

On Sunday, May 29, 2011, Plaintiff received a call from Ms. Erdlec asking if she had signed the paperwork. Compl. ¶ 26; Am. Compl. ¶ 25. Plaintiff explained that she did not want to take FMLA leave and her doctor did not believe it was appropriate. Compl. ¶ 27; Am. Compl. ¶ 26. As a result, Ms. Erdlec scheduled Plaintiff to go to work on Tuesday, May 31, 2011. Compl. ¶ 28; Am. Compl. ¶ 27. Plaintiff arrived for her shift on May 31, 2011, at 8:00 a.m. Compl. ¶ 29; Am. Compl. ¶ 28. At approximately 10:51 a.m., Plaintiff was directed by Mr. Endres to punch out and go home

---

[1] Tammy's last name is spelled both "Erdlc" and "Erdlec" throughout the Complaint and the proposed Amended Complaint.

until the paperwork was signed. Compl. ¶ 30; Am. Compl. ¶ 29. Plaintiff explained she was capable of performing the functions of her position and did not want to take FMLA leave. Compl. ¶ 31; Am. Compl. ¶ 30. Mr. Endres indicated that if Plaintiff did not fill out the paperwork, the company would simply force her to take FMLA leave. Compl. ¶ 23; Am. Compl. ¶ 22.

Plaintiff continued her opposition to FMLA leave, and, on June 1, 2011, she received notice from Memorial that she was being placed on FMLA leave and was required to take long term disability leave. Compl. ¶ 33; Am. Compl. ¶ 32. Plaintiff's health condition, ability to work, and nature of prescription medication she was taking did not change during her year of employment. Compl. ¶ 34; Am. Compl. ¶ 33. The Nurse Practitioner position at Valparaiso MedPoint Express clinic has been filled by a new employee. Compl. ¶ 35; Am. Compl. ¶ 34. Therefore, Plaintiff alleges that she was constructively discharged by Memorial on June 1, 2011. Compl. ¶ 36; Am. Compl. ¶ 35.

With these common background facts alleged in both the original Complaint and the proposed Amended Complaint, the Court considers whether Counts I and II of the proposed Amended Complaint brought under the ADA relate back to the FMLA claims alleged in the original Complaint.

*1.     Count I*

In Count I of the original Complaint brought under the FMLA, Plaintiff alleges that she did not have any qualifying conditions that would entitle her to FMLA leave, that her doctor assured her that she did not qualify for FMLA leave, that despite her protest, the company placed her on FMLA leave without any supporting documents or evidence, and that Memorial willfully and intentionally

7

violated 29 U.S.C. § 2612, et seq. by "forcing an [ineligible] employee to take FMLA leave." Pl. Compl.

In contrast, Count I of the proposed Amended Complaint brought under the ADA makes the following new allegations: Plaintiff suffers from stage 4 cancer of the lungs, bones, liver and breast, which is a qualified disability under the ADA, of which the Defendants were aware; she takes narcotic pain medication for her illness; she has substantial limitations on everyday major life activities but that her conditions did not cause her work performance to fail to meet her employer's legitimate expectations; she was constructively discharged on June 1, 2011, when she was forced to take FMLA leave; she was constructively discharged because of her disability as "evidenced by Mr. Endres requiring her to sign the FMLA paperwork which explicitly states that the employee may not be using a controlled substance as part of their treatment plan when the clinic was on notice of [Plaintiff's] treatment plan using prescription narcotics," proposed Am. Compl. ¶ 41; Memorial demonstrated a degenerative pattern of discrimination against Plaintiff's qualified disability; and Memorial failed to reasonably accommodate her qualified disability.

Defendants argue that, because none of these allegations are found in the original Complaint, the new ADA claims cannot relate back to the original Complaint given that there is no allegation in the original Complaint suggesting that Memorial discriminated or retaliated against Plaintiff on the basis of an alleged disability. Rather, Defendant argues that Count I of the original Complaint is based on the premise that Memorial forced Plaintiff to take FMLA leave against her will, despite her protestations that she had no qualifying medical condition and was perfectly capable of performing the essential functions of her job.

The Court disagrees. Although the substantive legal basis for the claim has changed, both the claim of forcing Plaintiff to take FMLA leave in Count I of the original Complaint brought under the FMLA and the claims of constructive discharge and discrimination in Count I of the proposed Amended Complaint brought under the ADA arise out of the same "conduct, transaction or occurrence," namely Memorial's action requiring Plaintiff to take FMLA leave on June 1, 2011, based on her known use of narcotic pain medication necessitated by her illness and which she alleges amounts to constructive discharge. Both the FMLA claim and the ADA claim are tied to the same "core of operative facts" and are based on the same underlying events. *See Tucker v. George*, No. 08-CV-24, 2009 WL 1444194, *5 (W.D. Wis. May 21, 2009) (rejecting the defendant's argument for a narrow reading of relation back under Rule 15(c), finding that the "plaintiff had not alleged any new events or episodes or attempted to seek relief for anything that occurred at a time or place different from those alleged in the pattern of conduct she described in her original complaint"). It is reasonable to read the original Complaint as alleging that Defendant discriminated against her and failed to accommodate her because of her use of narcotic medication related to her medical condition. The original Complaint explains that Plaintiff had undergone treatment for aggressive cancer prior to working for Memorial, that she took narcotic pain medication to treat persisting pain symptoms after she was hired, and that on several occasions she requested time off due to nausea stemming from her medications.

Defendants are correct that Plaintiff has made new allegations in further support of the ADA claim in Count I of the proposed Amended Complaint. However, most of those new allegations go to the legal elements of the ADA claim but do not change the underlying "conduct, transaction or occurrence" alleged in the original Complaint. A review of the general factual background set out

9

above reveals that there are sufficient facts alleged to put Defendants on notice of the conduct that underlies Plaintiff's claims, regardless of the legal theory. *See* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1497 (2d ed.1990) ("The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading."); *see also Male v. Tops Markets, LLC*, No. 08-CV-6234, 2011 WL 2421224, *5 (W.D.N.Y. June 13, 2011) (finding that the amended complaint related back to the original pleading because, even though the original pleading "did not state a plausible claim for relief, it was sufficient for the [sufficient factual] allegations in the Amended Complaint to relate back for the purposes of Rule 15(c))." Thus, the Court finds that Plaintiff's ADA discrimination and failure to accommodate claims share a common core of operative facts with the FMLA claims originally pled.

Notably, Plaintiff's EEOC Charge was brought based on disability discrimination and retaliation and references both the ADA and the FMLA. Thus, Defendants were on notice that the conduct surrounding Plaintiff's forced leave on June 1, 2011, was at issue. "Reasonably prudent defendants" who were aware of the EEOC charge, would have expected Plaintiff to assert a theory under the ADA to recover for the alleged forced leave.

Defendants then argue that, even if the Court finds that the ADA claims in the proposed Amended Complaint relate back to the original Complaint, the ADA claims cannot survive because placing an employee on FMLA is not considered discriminatory under the ADA, citing *Henye v. HGI-Lakeside, Inc.*, 589 F. Supp. 2d 1119, 1125-26 (S.D. Iowa 2008). In *Henye*, in the context of ruling on a motion for summary judgment, the court rejected the plaintiff's argument that his

10

employer regarded him as being disabled under the ADA, which was based on the sole assertion that "the forced, unrequested placement of [him] on FMLA leave speaks volumes about the attitude of the [employer]." *Id*. at 1125. In reasoning that it "fails to see why placing him on forced, unrequested medical leave suggest that [the employer] regarded [plaintiff] as disabled," *id*., the court noted that the plaintiff had offered no explanation of, or citation to the record, to explain what the employer's attitude was. *Id*. The Court does not find *Henye* persuasive on the instant motion to amend complaint, which is not subject to the same evidentiary standard as the motion for summary judgment and does not deal with the same legal claims before the Court in *Heyne*.

Based on the foregoing, the Court grants the Motion to Amend as to proposed amended Count I.

2. *Count II*

In Count II of the original Complaint, Plaintiff alleges retaliation under the FMLA. In Count II of the proposed Amended Complaint, Plaintiff alleges retaliation under the ADA. The retaliation claims are identical as to whom Plaintiff voiced her complaints and as to the basis of the complaints; the only difference is the statute under which she alleges she was being retaliated against. Both counts provide: "Ms. Vorgias indicated to her direct supervisor, Tammy Erdlec, Nurse Manager; and to Chris Endres, the Director of MedPoint Express Clinics that the company's request for FMLA certification, her placement on FMLA leave against her will or doctor's advice and subsequent constructive discharge were in violation of [FMLA law/ADA law]." *See* Compl ¶ 44; proposed Am. Compl ¶ 45. The Court finds that, although the substantive legal theory of the retaliation claim has changed from retaliation under the FMLA to retaliation under the ADA, the proposed amended retaliation claim arises out of the same "conduct, transaction or occurrence" set out in the original

11

Complaint. Therefore, the retaliation claim in Count II relates back to the original Complaint under Rule 15(c). *See Wagner v. Ill. Dept. of Pub. Aid*, 98 C 7268, 1999 WL 1016263, *4 (N.D. Ill. Nov. 4, 1999) (finding relation back when the failure to accommodate claim under the ADA involved the exact same conduct as the failure to accommodate claim under the Rehabilitation Act). The Court grants the Motion to Amend as to proposed amended Count II.

### B. Counts III, IV, and V – State Law Claims

Defendants argue that allowing the inclusion of the Indiana state law claims in Counts III, IV, and V in the proposed Amended Complaint would be futile because they are identical to Counts IV, V, and VI of the original Complaint and would not survive the Motion to Dismiss for failure to state a claim under 12(b)(6) that Defendants filed on July 16, 2012. In her reply brief, Plaintiff concedes that the proposed amended Count III for tortious wrongful discharge would not survive a motion to dismiss.[2] However, Plaintiff contends that the state law claims in proposed amended Counts IV and V are not futile.[3] The Court considers each count in turn.

*1. Count III*

Because Plaintiff concedes that the claim for tortious wrongful discharge in amended Count III, is futile, the Court denies the Motion to Amend as to proposed amended Count III.

---

[2] Plaintiff has attached to her reply brief a proposed *Second* Amended Complaint, which removes the claim for tortious wrongful discharge alleged in Count III of the proposed Amended Complaint. However, because the proposed Amended Complaint is the subject of the instant Motion to Amend, all references by the Court will be to the proposed Amended Complaint attached to the motion and *not* to the proposed Second Amended Complaint attached to the reply brief.

[3] Defendants argue that the Court should not consider Plaintiff's reply brief because Plaintiff failed to file a response to their Motion to Dismiss and she should not now be able to present the Court with arguments why these claims would survive the pending Motion to Dismiss in order to support her request for leave to amend the Complaint. In the interests of justice and given the liberal standard for the amendment of pleadings, the Court considers Plaintiff's reply brief.

*2. Count IV*

In proposed amended Count IV, titled "Tortious Interference with an Employment Contract," Plaintiff alleges that she was hired to work as a nurse practitioner for Memorial through MedPoint Express Clinic in June 2010; at all relevant times, Chris Endres was the Director of MedPoint Express Clinics for Memorial; after a year of employment, Plaintiff was requested by Mr. Endres to fill out FMLA request paperwork; Memorial's family and medical leave policy indicates that managers should provide these forms if the employee has requested leave or has a potential qualifying leave event; Plaintiff did not request leave and did not have a potential qualifying leave event; Mr. Endres was acting outside the scope of employment by producing the packet and processing the FMLA paperwork; and as a direct and proximate result, Plaintiff lost her employment with Memorial.

The elements for tortious interference with an employment contract are "(1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Melton v. Ousley*, 925 N.E.2d 430, 440 (Ind. Ct. App. 2010) (citing *Levee v. Beeching*, 729 N.E.2d 215, 221 (Ind. Ct. App. 2000)).

However, "Indiana courts have repeatedly rejected efforts by fired employees to pursue tortious interference claims against individual officers, directors, and other managers of employers who played a role in their termination." *White v. Local Union No. 1111, United Auto., Aerospace & Agr. Implement Workers of Am., UAW*, No. 1:03-CV-815, 2005 WL 280349, *14 (S.D. Ind. Jan. 20, 2005) (citing *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1317-18 (Ind. Ct. App.

1993); *Martin v. Platt*, 386 N.E.2d 1026, 1027 (Ind. Ct. App. 1979); *Kiyose v. Trs. of Ind. Univ.*, 333 N.E.2d 886, 891 (Ind. Ct. App. 1975); *Leslie v. St. Vincent New Hope, Inc.*, 873 F. Supp. 1250, 1255-56 (S.D. Ind. 1995)). Under Indiana law, an action for intentional interference with contract can be brought only against a third party. *See Martin v. Platt*, 386 N.E.2d 1026, 1027 (Ind. Ct. App. 1979). If an agent of the contracting party is acting within the scope of his authority and duties, liability cannot be brought against the agent. *See Kiyose v. Trs. of Ind. Univ.*, 333 N.E.2d 886, 891 (Ind. Ct. App. 1975); *see also Ward v. Indep. Order of Foresters*, No. 1:04-CV0676, 2006 WL 571874, *14 (S.D. Ind. Mar. 7, 2006) (finding that tort of intentional interference could not be brought against individual defendants who were a vice president of the employer and a human-resources employee because the allegations did not indicate that their actions were beyond the scope of their authorities); *Leslie*, 873 F. Supp. at 1255-56 (citing *Kiyose*, 333 N.E.2d at 891; *Martin*, 386 N.E.2d at 1027). In this case, the allegations in proposed Count IV indicate that providing employees with FMLA paperwork was part of Mr. Endres' duties.

Moreover, Indiana law does not support a theory of recovery based on an allegation that a supervisor's personal "motives took [the supervisor's] actions outside the scope of [the supervisor's] employment." *Trail v. Boys and Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 140 (Ind. 2006) (quoting *Leslie*, 873 F. Supp. 1250). If the supervisor possessed the authority to take the employment action as part of the supervisor's ordinary duties, the supervisor's personal motivation for doing so is irrelevant and the "motives could not affect whether [the supervisor's] actions [are] within the scope of [the supervisor's] duties." *Id.* (quoting *Leslie*, 873 F. Supp. at 1257; citing *Martin*, 386 N.E.2d at 1027). Although proposed amended Count IV does not allege any improper personal motivation

14

by Mr. Endres, even if it did, Mr. Endres' motivation for providing Plaintiff with the FMLA paperwork cannot take his actions outside the scope of his employment.

Nevertheless, the Indiana Supreme Court in *Trail* suggests that a plaintiff might be able to state a claim for tortious interference against a supervisor if the plaintiff alleges that the supervisor's actions were "prompted by a legally improper motive." *Trail*, 845 N.E.2d at 140. Although Plaintiff has not specifically alleged within proposed amended Count IV that Mr. Endres' actions were "prompted by a legally improper motive," Plaintiff does allege in the proposed Amended Complaint that Mr. Endres required her to take unrequested FMLA leave. In response, Defendants argue that placing an employee on "involuntary FMLA leave" is not legally impermissible. *See* Def. Sur-response, p. 8 (citing *Willis v. Coca Cola Enters.*, 445 F.3d 413, 417 (5th Cir. 2006) (addressing a claim by an employee that she was placed on "involuntary leave" when her supervisor refused to permit her to return to work until she had gotten a medical release and holding that it is not contrary to the FMLA for an employee to be placed on "involuntary FMLA leave")). The court in *Willis* notes that, in a 1995 advisory opinion, the Department of Labor stated

> an employer can count an absence for sickness or injury as an FMLA absence if the employee does not request that it be counted as such. So long as the employer is a covered employer, the employee is an eligible employee, *and the reason for the absence meets one of the conditions described in the definitions of "serious health conditions" under FMLA*, the employer may designate (and so advise the employee) and count the absence against the employee's 12-week FMLA entitlement even if the employee has not requested that it be counted as such.

445 F.3d at 417-18 (emphasis added) (citing 99 Wage & Hour Manual (BNA) 3067, Op. FMLA-68 (July 21, 1995)).

However, *Willis* also provides that, "the statutory language of the FMLA and the relevant caselaw from our sister circuits require, even in the case of involuntary leave, that the employee

15

provide sufficient notice to an employer of the need to take FMLA leave; in other words, that the employee provide notice to the employer of a 'serious health condition.'" *Willis*, 445 F.3d at 418-19 (citing 29 C.F.R. § 825.112(a)(4) and discussing case law from other circuits addressing when an employer may place an employee on involuntary FMLA leave); *see also Dotson v. BRP U.S. Inc.*, 520 F.3d 703, 708 (7th Cir. 2008) (recognizing that an employer may count time absent from work by an eligible employee with a "serious health condition" as FMLA leave even when not so requested by the employee). "For purposes of FMLA, 'serious health condition' entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves inpatient care as defined in § 825.114 or continuing treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a).[4]

---

[4] "Continuing treatment" is defined by § 825.115:
A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
(a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
> (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.
> (4) Whether additional treatment visits or a regimen of continuing treatment is necessary within the 30–day period shall be determined by the health care provider.
> (5) The term "extenuating circumstances" in paragraph (a)(1) of this section means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider. Whether a given set of circumstances are extenuating depends on the facts. For example, extenuating circumstances exist if a health care provider determines that a second in-person visit is needed within the 30–day period, but the health care provider does not have any available appointments during that time period.

. . .

(c) Chronic conditions. Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;
> (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

In this case, Plaintiff alleges in proposed amended Count IV that she "did not request leave and did not have a potential qualifying leave event," which appears to be an allegation that she did not have a "serious health condition." Proposed Am. Compl. ¶ 57. Defendants note in their memorandum in support of their Motion to Dismiss that Plaintiff alleges in the facts section of her Complaint (which are also in her proposed Amended Complaint) that (1) she had taken some time off due to treatment of an aggressive cancer *prior* to accepting the offer of employment from Defendant, (Compl. ¶ 13; Am. Compl. ¶ 12) (emphasis added); (2) at the time of her hire, she was taking prescription narcotic pain medication to treat her persisting pain symptoms (Compl. ¶ 14; Am. Compl. ¶ 13); (3) her "health condition and medications were open[ly] discussed during her interview and hire process." (Compl. ¶ 15; Am. Compl. ¶14); and "on several occasions [she] specifically requested time off due to nausea stemming from the medications." (Compl. ¶ 19; Am. Compl. ¶ 18). However, neither in opposition to the instant Motion to Amend or in support of their Motion to Dismiss do Defendants argue that Plaintiff provided notice of a "serious health condition" justifying involuntary FMLA leave.

---

(d) Permanent or long-term conditions. A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.
(e) Conditions requiring multiple treatments. Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, for:
    (1) Restorative surgery after an accident or other injury; or
    (2) A condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), or kidney disease (dialysis).
(f) Absences attributable to incapacity under paragraph (b) or (c) of this section qualify for FMLA leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a certain level. An employee who is pregnant may be unable to report to work because of severe morning sickness'
29 C.F.R. § 825.115.

The parties also have not sufficiently briefed the issue of whether requiring an employee (either with or without a "serious health condition") to take involuntary FMLA leave constitutes a "legally improper motive" for purposes of rendering a supervisor liable for a claim of tortious interference under Indiana law. On the arguments as presently briefed, the Court cannot say at this stage of the litigation that Plaintiff's tortious interference claim against Mr. Endres would be futile. Accordingly, the Court grants the Motion to Amend as to proposed amended Count IV.

3. *Count V*

Under Indiana law, promissory estoppel encompasses the following elements: "(1) a promise by the promissor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise." *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001) (citing *First Nat'l Bank of Logansport v. Logan Mfg. Co., Inc.*, 577 N.E.2d 949, 954 (Ind. 1991)).

In proposed amended Count V, titled "Promissory Estoppel," Plaintiff alleges that Memorial had provisions in its Family and Medical leave booklet describing "Member Rights and Obligations" on which Plaintiff relied and all of which were violated with respect to Plaintiff's employment with Memorial. Plaintiff further alleges that Memorial had a policy and procedure with respect to "Alcohol, Drugs and Controlled Substances" that was followed at the time of Plaintiff's offer of employment and that Plaintiff relied on Memorial's actions and expected the procedures to be followed for the duration of her employment. She alleges that her placement on forced FMLA leave and subsequent constructive discharge did not follow these procedures. She concludes, "in accepting her employment with Memorial Health System Inc., [she] relied on their indication that

18

it will be up to her and her physician to determine the impact of her prescribed medication on her ability to work and that Memorial Health System Inc. acquiesced to such treatment by extending her offer of employment." Proposed Am. Compl. ¶ 70. She "also relied on the company's representations that FMLA leave shall be given only due to an employee's request, with 30 days notice and her physician's approval." *Id*. at ¶ 71. Finally, Plaintiff alleges that "[i]njustice to [Plaintiff] can only be avoided by requiring Memorial Health System Inc. to abide by its own policies and procedures." *Id*. at ¶ 72.

However, Plaintiff does not allege that Memorial made any promise of a "definite and substantial nature" to Plaintiff. Notably, Plaintiff's reply brief in support of her motion also does not argue that Memorial made any promise. Rather, Plaintiff's reply brief argues only Memorial failed to follow its "policies," that Plaintiff "alludes" to promises in her proposed Amended Complaint, and that the "promises" are "implied in [Memorial's] policies." Pl. Reply, p. 5-6.

Moreover, Plaintiff's promissory estoppel claim derives from her allegations that Memorial inappropriately placed her on FMLA leave against her will. Yet, Plaintiff does not allege that Memorial promised it would *not* place her on FMLA leave for any other legitimate reason not referenced in the FMLA booklet. The booklet provisions referenced by Plaintiff inform employees as to the eligibility requirements to exercise their right to obtain FMLA leave. This is not a case in which Plaintiff has alleged that Memorial failed to place her on leave despite meeting the eligibility requirements set forth in the FMLA booklet. *See, e.g.*, *Peters v. Gilead Sciences, Inc.*, 533 F.3d 594, 600 (7th Cir. 2008) (explaining that FMLA leave provisions in an employee handbook might be construed as a promise by the employer to allow 12 weeks of medical leave). As for the "Alcohol,

19

Drugs and Controlled Substances" policy, Plaintiff also does not allege that they constitute promises nor does the policy promise that Memorial could not place Plaintiff on FMLA leave if appropriate.

Accordingly, because proposed amended Count V would be futile because it would not survive a motion to dismiss, the Court denies the Motion to Amend as to proposed amended Count V.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part and DENIES in part** the Motion for Leave of Court to File Amended Complaint [DE 12] and **ORDERS** Plaintiff to **FILE** an Amended Complaint consistent with the Court's ruling upon receipt of this Order.

So ORDERED this 27th day of November, 2012.

s/ Paul R. Cherry  
MAGISTRATE JUDGE PAUL R. CHERRY  
UNITED STATES DISTRICT COURT

cc: All counsel of record